**Grace OLECH, Plaintiff–Appellant,**

v.

**VILLAGE OF WILLOWBROOK, et al., Defendants–Appellees.**

No. 98–2235.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 8, 1998.

Decided Nov. 12, 1998.

John R. Wimmer (argued), Downers Grove, IL, for Plaintiff–Appellant.

James L. DeAno (argued), Norton, Mancini, Argentati, Weiler & Deano, Wheaton, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and CUMMINGS and ESCHBACH, Circuit Judges.

POSNER, Chief Judge.

In *Esmail v. Macrane*, 53 F.3d 176 (7th Cir.1995), we held that the equal protection clause provides a remedy when "a powerful public official picked on a person out of sheer vindictiveness." *Id.* at 178. Although the clause is more commonly invoked on behalf of a person who either belongs to a vulnerable minority or is harmed by an irrational difference in treatment, it can also be invoked, we held, by a person who can prove that "action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Id.* at 180. See also *Indiana State Teachers Ass'n v. Board of School Commissioners*, 101 F.3d 1179, 1181–82 (7th Cir.1996); *Ciechon v. City of Chicago*, 686 F.2d 511, 522–24 (7th Cir.1982); *Batra v. Board of Regents*, 79 F.3d 717, 721–22 (8th Cir.1996); *Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen*, 932 F.2d 89, 94 (1st Cir.1991); *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir.1980). Grace Olech brought suit against the Village of Willowbrook and two of its high officials in reliance on *Esmail's* principle and was tossed out on the defendants' Rule 12(b)(6) motion on the ground that the facts pleaded in her complaint did not fit the mold of *Esmail.*

■ Olech and her husband, now deceased, used to get their water from a well on their property. But the well broke down and they asked the Village of Willowbrook, where their property is located, to connect their home to the municipal water system. The Village agreed, but besides requiring the Olechs to pay the cost of the hook up (which apparently is a standard requirement and one with which they complied without complaining) told them they would have to grant the Village not the customary 15–foot easement to enable servicing of the water main but a 33–foot easement to permit the Village to widen the road on which they live. The Olechs refused, and after three months the Village relented, acceded to the smaller easement, and hooked up the water. But meanwhile the Olechs had been without water and as a consequence suffered various types of damage for which they seek redress in this suit.

So far in our recitation of the allegations of the complaint there is nothing to suggest a denial of equal protection. But the complaint goes on to allege that the defendants' motivation for insisting on the nonstandard easement was the fact that the Olechs earlier had sued the Village, and obtained damages, for flood damage caused by the Village's negligent installation and enlargement of culverts located near the Olechs' property. See *Zimmer v. Village of Willowbrook*, 242 Ill.App.3d 437, 182 Ill.Dec. 840, 610 N.E.2d 709, 712 (Ill.App.1993). The complaint alleges that the lawsuit generated "substantial ill will" that caused the Village to depart from its normal policy of demanding only a 15–foot easement in exchange for providing municipal water and instead to decide to pave over a chunk of the Olechs' property. A letter is cited in which the Village's lawyer conceded, after the Village had backed down and agreed to require only the 15–foot easement,

that that easement "will be sufficient to install the water main. This is consistent with Village policy regarding all other property in the Village." For three months the Olechs had been treated differently, to their detriment, from all other property owners in the Village only because their meritorious suit against the Village had angered Village officials. These are just allegations and may be false. But as the defendants acknowledge, we must assume they are true for purposes of this appeal. The defendants have yet to file an answer or any other pleading that denies any fact alleged in the complaint.

Nevertheless the district judge granted the defendants' motion to dismiss because the complaint didn't allege an "orchestrated campaign of official harassment" motivated by "sheer malice," quoting our opinion in *Esmail*. 53 F.3d at 179. Nothing in the *Esmail* opinion, however, suggests a *general* requirement of "orchestration" in vindictive-action equal protection cases, let alone a legally significant distinction between "sheer malice" and "substantial ill will," if, as alleged here, the ill will is the sole cause of the action of which the plaintiff complains. Esmail was complaining that he had been denied liquor licenses on the basis of trivial infractions for which no other applicant had ever been denied a license. Standing by itself, this difference in treatment would not have been a denial of equal protection, but merely an example of uneven law enforcement, than which nothing is more common nor, in the usual case, constitutionally innocent. E.g., *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Esmail v. Macrane, supra*, 53 F.3d at 179; *Falls v. Town of Dyer*, 875 F.2d 146, 148–49 (7th Cir.1989); *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir.1985). The plaintiff had to and did allege that the denial of his applications was the result not of prosecutorial discretion honestly (even if ineptly—even if arbitrarily) exercised but of an illegitimate desire to "get" him because of lawful actions by him that had aroused the mayor's ire. It was in that context that we pointed out that the complaint alleged much more than uneven enforcement.

The present case is not one of uneven enforcement. The Village does not deny that it has a legal obligation to provide water to all its residents. If it refuses to perform this obligation for one of the residents, for no reason other than a baseless hatred, then it denies that resident the equal protection of the laws. And that is sufficiently alleged. While it may have been important in *Esmail* that the plaintiff alleged an "orchestrated campaign," it was not important here. The district judge did not try to hook up the requirement of an "orchestrated campaign" to the language or policy of the equal protection clause, and we cannot think of any hook either. Nor is it important that the oppression of the plaintiff was merely temporary. Many temporary deprivations are actionable even under provisions of the Constitution that, unlike the equal protection clause, require that the deprivation be of liberty or property. E.g., *Connecticut v. Doehr*, 501 U.S. 1, 15, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991); *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 318–19, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *In re Special March 1981 Grand Jury*, 753 F.2d 575, 580 (7th Cir.1985). And to be deprived of water for three months is a potentially more serious deprivation than many permanent deprivations that we can think of.

■ Of course we are troubled, as was the district judge, by the prospect of turning every squabble over municipal services, of which there must be tens or even hundreds of thousands every year, into a federal constitutional case. But bear in mind that the "vindictive action" class of equal protection cases requires proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant. If the defendant would have taken the complained-of action anyway, even if it didn't have the animus, the animus would not condemn the action; a tincture of ill will does not invalidate governmental action. Maybe the present case can be disposed of on this or some other ground well short of trial; it cannot be disposed of on the pleadings.

And especially not on the defendants' alternative ground, that their action was not

the cause of the plaintiff's lacking water for three months. They point out that had her well not broken down, which is not contended to be their fault, she would have had an uninterrupted supply of water no matter what the Village failed to do. This is a ridiculous argument. It is like saying that if she didn't live in the Village of Willowbrook she wouldn't (in all likelihood) have had a water problem. That is blaming the victim with a vengeance. Every injury has a multitude of antecedent conditions. When one of them is the defendant's culpable fault, he is not excused from liability on the ground that if some other, innocent condition hadn't been present (such as Columbus's discovery of America) no injury would have occurred. E.g., *Movitz v. First National Bank*, 148 F.3d 760, 762 (7th Cir.1998); *United States v. Feliciano*, 45 F.3d 1070, 1075 (7th Cir.1995); *Milam v. State Farm Mutual Automobile Ins. Co.*, 972 F.2d 166, 169 (7th Cir.1992).

REVERSED.