In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3727

Eyrle S. Hilton, IV,

Plaintiff-Appellant,

v.

City of Wheeling, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 860--Charles P. Kocoras, Judge.

Argued March 27, 2000--Decided April 20, 2000

 Before Posner, Chief Judge, and Flaum and Williams,
Circuit Judges.

 Posner, Chief Judge.  Eyrle Stuart Hilton, IV
sued the Village of Wheeling (a Chicago suburb)
and members of its police force (plus two social
workers employed by the Village) for injunctive
relief and damages, alleging violations of his
constitutional rights to petition the government
for redress of grievances and to enjoy the equal
protection of the laws. 42 U.S.C. sec. 1983. The
district court granted summary judgment for the
defendants.

 For the last seven years Hilton and his
neighbors in an apartment complex in a blue-
collar district of Wheeling have been locked in a
feud that began when Hilton was seen beating a
Rottweiler puppy (appropriately named "Rommel")
with what a neighbor who called the police
described as a baseball bat, though Hilton claims
that it was merely a rawhide chew stick. When the
police arrived he explained that he had broken
his arm (Hilton's arm, not the dog's) beating
Rommel the previous evening. Hilton was cited for
cruelty to animals and fined $500. The subsequent
history of Rommel is interesting, though perhaps
not strictly germane. Hilton tired of Rommel,
took him to a veterinarian, and told the
veterinarian to kill the dog. The vet refused,
saying that the dog was healthy (Hilton's savage

beatings had failed to injure Rommel) and that he wanted to put him up for adoption. Hilton agreed, but later decided he wanted Rommel back, and when he could not get him back protested at an open hearing of the Wheeling village council, dragging the empty leash behind him to punctuate his plea.

 Since the initial contretemps with his neighbors over Rommel, Hilton has been cited or arrested some fifteen times by the Wheeling police on neighbors' complaints for such transgressions as disorderly conduct, battery, and violating noise ordinances by yelling or by playing his stereo too loud. Hilton does not deny that there was probable cause for each of these arrests or citations. His argument rather is that the police have not been evenhanded in arbitrating, as it were, his feud with his neighbors. He has complained to the police about them many times. One neighbor, he complained, had kicked and broken his door. Another had thrown a rock at his house. Others had made loud noise. One called him an "idiot" in front of a police officer, which he describes as "verbal harassment." And so on. The police responded to all these complaints--they have responded some eighty times over the past seven years to complaints arising out of the feud. But only once have they taken any action against a neighbor complained of by Hilton. That was when he complained to them that a neighbor's dog was barking loudly--and the police cited him for disorderly conduct as well as the neighbor. They have enforced the law one-sidedly.

 The right to petition the government for redress of grievances is found in the First Amendment to the Constitution but has been held to be enforceable against the states by virtue of the due process clause of the Fourteenth Amendment. Edwards v. South Carolina, 372 U.S. 229, 235 (1963); Grossbaum v. Indianapolis-Marion County Building Authority, 100 F.3d 1287, 1294 n. 5 (7th Cir. 1996). The right (on which see McDonald v. Smith, 472 U.S. 479, 482-85 (1985)) has never been understood to be a right to police assistance, or for that matter to any governmental assistance, services, or largesse. As the Supreme Court held in DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195-97 (1989), and we have repeated many times, the Constitution, insofar as it creates or protects liberties, is (with immaterial exceptions) a charter of negative liberties. River Park, Inc. v. City of Highland Park, 23 F.3d 164, 166 (7th Cir. 1994); K.H. Through Murphy v. Morgan, 914 F.2d 846, 848-49 (7th Cir. 1990); Jackson v. City of Joliet, 715 F.2d 1200, 1203-04 (7th Cir. 1983); Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982); Pinder v. Johnson, 54 F.3d 1169, 1174 (4th Cir. 1995)

(en banc); Alston v. Redman, 34 F.3d 1237, 1247 (3d Cir. 1994); David P. Currie, "Positive and Negative Constitutional Rights," 53 U. Chi. L. Rev. 864 (1986). It creates areas in which the government has to let people alone; it does not entitle them to demand services, such as police protection.

The reasons are historical, Jackson v. City of Joliet, supra, 715 F.2d at 1203, but also practical: it is not a feasible undertaking for the federal courts to direct the allocation of public resources to particular public services. So while the government may not interfere with the right to petition, California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972); Harrell v. Cook, 169 F.3d 428, 432 (7th Cir. 1999); Vasquez v. Hernandez, 60 F.3d 325, 328 (7th Cir. 1995), it need not grant the petition, no matter how meritorious it is. Cf. Linda R.S. v. Richard D., 410 U.S. 614 (1973). Nor, by the way, does the right to petition for redress of grievances imply a duty of the government to make every government employee a petition receiver. Although we cannot find a case on the point (there are few cases construing the right-to-petition clause), we think it plain that the right is merely a right to petition the appropriate government entity, in this case the local prosecutor rather than the police on the beat. We point this out to remind Mr. Hilton that he may have other avenues of redress.

A complaint of unequal police protection in violation of the equal protection clause is less easily disposed of. On the one hand, the clause, concerned as it is with equal treatment rather than with establishing entitlements to some minimum of government services, does not entitle a person to adequate, or indeed to any, police protection. On the other hand, selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection. Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 70 (1873); David P. Currie, The Constitution in the Supreme Court: The First Hundred Years 349 (1985). Hilton, and so far as appears his neighbors, are all white; there is no suggestion that he is being discriminated against because of his race, religion, gender, or some other attribute that defines a group traditionally protected by the equal protection clause. But now that the Supreme Court has affirmed our decision in Olech v. Village of Willowbrook, 160 F.3d 386 (7th Cir. 1998), aff'd, 120 S. Ct. 1073 (2000) (per curiam), we know that a person doesn't have to be a member of a protected group to invoke the clause. If the

police decided to withdraw all protection from Hilton out of sheer malice, or because they had been bribed by his neighbors, he would state a claim under Olech. See also Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995), and other cases cited at 160 F.3d 387; Forseth v. Village of Sussex, 199 F.3d 363, 371 (7th Cir. 2000); Levenstein v. Salafsky, 164 F.3d 345, 352 (7th Cir. 1998); cf. Friedrich Duerrenmatt, The Visit. But there is no suggestion of this. For reasons that Hilton has not attempted to discover, the police exercised the broad discretion that custom gives them in enforcing minor public nuisance laws, in favor of the neighbors. For all we know, they did so simply because the neighbors were always in the right and Hilton always in the wrong. But maybe not; maybe the Wheeling police are inept, or have been deceived by the neighbors. It doesn't matter; what matters is the absence of evidence of an improper motive.

The role of motive is left unclear by the Supreme Court's decision. On the one hand the Court recited the standard formula that the equal protection clause forbids intentional differences in treatment for which there is no rational basis. On the other hand it said that the claim that the difference in treatment was "irrational and wholly arbitrary" (emphasis added) was sufficient and that the Court was not reaching our "alternative theory of 'subjective ill will.'" 120 S. Ct. at 1075. If a merely unexplained difference in police treatment of similar complaints made by different people established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws. Repeating what we said in our opinion in Olech, and Justice Breyer in his concurring opinion in the Supreme Court, 120 S. Ct. at 1075, we gloss "no rational basis" in the unusual setting of "class of one" equal protection cases to mean that to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position. We described the class of equal protection cases illustrated by Olech as "vindictive action" cases and said that they require "proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant." 160 F.3d at 388. No evidence of such an animus was presented in this case.

Amplifying our earlier point about other remedies, we note that if the neighbors have committed torts against Hilton, he has civil remedies under state law. He has no remedy under

the U.S. Constitution.

Affirmed.