**Richard HARVEY, et al., Plaintiffs,**

v.

**CITY OF CONROE, TEXAS,
Defendant.**

No. CIV. A. H–99–4040.

United States District Court,
S.D. Texas,
Houston Division.

Oct. 24, 2000.

Richard W. Harvey, Spring, TX, pro se.

Debra G. Harvey, Spring, TX, pro se.

Barbara Elliott Roberts, Magenheim Bateman et al, William Scott Helfand, Magenheim Bateman et al, Houston, TX, for defendant.

### *MEMORANDUM AND ORDER*

ATLAS, District Judge.

This equal protection case [1] is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 41] filed by Defendant City of Conroe, Texas (the "City"). Plaintiffs Richard W. Harvey ("Mr. Harvey") and Debra G. Harvey ("Mrs. Harvey"), *pro se*, filed a response in opposition ("Response") [Doc. # 44]. Based on the Court's thorough review of the full record in this case and the application of relevant legal authorities, the Court grants Defendant's Motion.

---

1. In addition to the constitutional claim, Plaintiffs originally asserted state law claims against the City. These state law claims, however, were abandoned by Plaintiffs on the record during one of the many discovery conferences in this case. Consequently, the only claim remaining in the case is Plaintiffs' equal protection claim.

## I. BACKGROUND [2]

Plaintiffs allege that, as part of the proceeds from the sale of a piece of real property they owned, they had in excess of $120,000 in cash. Mrs. Harvey left the cash with a manicurist who worked in a nail salon in which Mrs. Harvey was a patron. Mrs. Harvey testified that she trusted the manicurist because she had a "little Christian saying on her desk." Deposition of Mrs. Harvey (Exh. A to Motion), at 28. From time to time, Mrs. Harvey would ask the manicurist for some of the cash, and the manicurist would retrieve it from her bank safe deposit box. Mrs. Harvey later became suspicious of the manicurist "because she was suddenly taking trips everywhere, she was wearing new clothes, she was leading a different type life-style than she had ever lived before." Deposition of Mrs. Harvey (Exh. A to Motion), at 29–30. As a result, Mrs. Harvey asked the manicurist to return the remainder of the cash.

On Friday, November 20, 1998, Mrs. Harvey retrieved from the manicurist a box which purportedly contained the cash. Mrs. Harvey took the box to her car, where she alleges she was attacked and the box was stolen. Mrs. Harvey observed the assailant and the license plate number of the vehicle in which he fled the scene.

Conroe Police Department ("CPD") Officer Roy Dupuy was dispatched to the scene in response to the report of the robbery. Officer Dupuy interviewed Mrs. Harvey and made a written report. Officer Dupuy, based on his interview with Mrs. Harvey and his observations at the scene, determined that a criminologist was not necessary because it was not likely that forensic evidence would be present. Officer Dupuy also decided that the investigator assigned to the case would be able to determine the identity of the witnesses present at the nail salon.

Approximately 25 minutes after the incident, Mr. Harvey arrived on the scene and took Mrs. Harvey to the hospital. Plaintiffs allege that Mrs. Harvey suffered a bruise on her head and a fractured rib.

The following Monday, November 23, 1998, CPD Investigator Charles Stephen Roper was assigned Mrs. Harvey's case. Investigator Roper reviewed Officer Dupuy's report and determined that only three people knew that Mrs. Harvey would have the cash outside the nail salon on Friday, November 20, 1998. These people were Mrs. Harvey, Mr. Harvey, and Sharon Weiner, the manicurist. Investigator Roper determined that the attack and robbery were not random or serial crimes.

Mrs. Harvey's assailant has not been apprehended and the cash has not been recovered. Plaintiffs allege that the CPD violated their right to equal protection under the Fourteenth Amendment by failing to investigate fully the crime against Mrs. Harvey because she was not a member of a good old boy network that allegedly exists in Conroe.[3]

---

2. The Court bases this Background statement on the summary judgment record rather than on Plaintiffs' prior oral statements which were inconsistent with or otherwise different from the summary judgment evidence.

3. Plaintiffs have not clearly described the good old boy network on which they base their claim. CPD Chief of Police John T. Lindon was questioned during his deposition about animosity between Conroe and The Woodlands, a residential community near Conroe, including competition and rivalries between the two high schools. See Lindon Deposition (Exh. E to Response), at 100. Mr. Harvey testified in his deposition that anyone who lives in the City of Conroe is a member of the clique. See Deposition of Mr. Harvey (Exh. B to Motion), at 222.

After an extensive opportunity for discovery, with the discovery rules applied by the Court in a liberal manner to enable Plaintiffs to obtain any existing evidence which might support their claim, the City moved for summary judgment. Plaintiffs filed their Response, and the City's Motion is ripe for decision.

## II. STANDARD FOR SUMMARY JUDGMENT

The United States Supreme Court has held that a motion for summary judgment is properly granted unless there is evidence "on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wheeler v. Miller*, 168 F.3d 241, 247 (5th Cir.1999). Rule 56 is an integral part of the Federal Rules of Civil Procedure, recognizing a party's right to demonstrate that certain claims have no factual basis and to have those unsupported claims disposed of prior to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant shows that there are no genuine issues of material fact, the burden is on the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. *Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied*, 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(*en banc*).

"Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir.1991). Rumors, speculation, hearsay and other information which would be excluded at trial cannot be considered in ruling on a motion for summary judgment. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.1995).

## III. ANALYSIS

### A. Current Requirements for Equal Protection Claim

■ The City argues that Plaintiffs have not presented evidence which raises a genuine issue of material fact to support their equal protection claim.[4] The United States Supreme Court has recognized an equal protection claim in the context of a single-member class "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 563–64, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). To succeed on an equal protection claim, a plaintiff must establish that the defendant "irrationally and intentionally singled [plaintiff] out for dissimilar treatment." *Ford Motor Co. v. Texas De-*

4. The City also argues that Plaintiffs have failed to raise a genuine issue of material fact to support the imposition of municipal liability under 42 U.S.C. § 1983. Although the City's argument in this regard is well-taken, the Court's decision that Plaintiffs' evidence does not raise a fact dispute regarding the equal protection claim renders a decision on the municipal liability issue unnecessary.

*partment of Transportation,* 106 F.Supp.2d 905, 910 (W.D.Tex.2000).

The Supreme Court in *Village of Willowbrook* affirmed the judgment of the Seventh Circuit but did "not reach the alternative theory of 'subjective ill will' relied on by that court." *See Village of Willowbrook,* 120 S.Ct. at 1075. Justice Breyer, however, concurred in the Supreme Court's decision based on the Seventh Circuit's requirement that the plaintiff prove the extra factor referred to as "vindictive action." *See id.* (Breyer, J., concurring).

■ The Seventh Circuit in *Hilton v. City of Wheeling,* 209 F.3d 1005, 1008 (7th Cir.2000), reaffirmed this "extra factor" requirement. In *Hilton,* the plaintiffs asserted an equal protection claim based on unequal police protection. The Seventh Circuit held that the plaintiff "must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Id.* A successful equal protection claim requires "proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant." *Id.*

The Fifth Circuit has also held that the "plaintiff must prove that the government official's acts were motivated by improper considerations ...." *See Bryan v. City of Madison,* 213 F.3d 267, 277 (5th Cir.2000). The Fifth Circuit recognized the Supreme Court's holding in *Village of Willowbrook,* but held that the decision "does not alter ... [the] requirement of an improper motive, such as racial animus, for selective enforcement claims." *Id.* at 277 n. 17.

**B.  Requirement for Different Treatment of Others Similarly Situated**

■ Although Plaintiffs allege that other similar crimes were investigated by the CPD in a different manner than the robbery of Mrs. Harvey, the only crimes identified by Plaintiffs in their Response and the attached exhibits for purposes of comparison are two bank robberies and the robbery of a store in Conroe. The comparison crimes identified by Plaintiffs, however, are not similar to the robbery of Mrs. Harvey. For example, bank robberies are federal crimes and require that the Federal Bureau of Investigation be notified. *See* Lindon Depo., at 113. Also, business robberies, such as bank robberies, are more likely to recur than are isolated robberies such as that of Mrs. Harvey. *Id.* at 114.

Plaintiffs have failed to identify or present evidence of a similar robbery of an individual and, consequently, have failed to present evidence to raise a fact dispute regarding this element of their equal protection claim.

**C.  Requirement That There Be No Rational Basis for Difference**

■ Even were the Court to accept Plaintiffs' comparison crimes, the City has presented evidence of a rational basis for the manner in which Mrs. Harvey's case was investigated. Officer Dupuy determined that the witnesses in the nail salon could be easily identified by the investigator and that it was unlikely that forensic evidence would be found at the scene. *See* Dupuy Affidavit, Exh. F to Motion, ¶ 5. Investigator Roper determined that only Plaintiffs and the manicurist knew that Mrs. Harvey would have the cash at the nail salon on Friday, November 20, 1998, at the precise time. *See* Roper Affidavit, Exh. E to Motion, ¶ 4. As a result, Investigator Roper determined that this was not a random crime and he investigated accordingly. *Id.*

■ Plaintiffs have introduced evidence that Officer Dupuy was discharged from his employment with the Port Arthur Police Department because he lacked initiative and failed to demonstrate the ability to function independently. *See* Notice of Suspension or Termination, Exh. B to Response. Whether or not Officer Dupuy's initial investigation at the crime scene was in any way deficient, however, is "beside the point, for what is relevant for purposes of evaluating plaintiffs' equal protection claim is whether [the CPD officers] had a rational basis for" their decisions regarding the investigation of Mrs. Harvey's robbery. *See, e.g., Summers v. City of Raymond,* 105 F.Supp.2d 549, 552 (S.D.Miss. 2000) (equal protection allegations involving towing plaintiffs' vehicles and not towing others parked in the same area).

Plaintiffs allege that Mrs. Harvey's robbery was treated differently because she is not a member of a "good old boy" network. Plaintiffs also allege that the CPD investigated Mrs. Harvey's robbery differently because it occurred on a Friday.[5] Plaintiffs do not suggest different treatment on the basis of their race, gender, religion, or any other attribute which has traditionally defined a group for equal protection purposes.

With reference to the "good old boy" allegation, Plaintiffs have failed to present evidence of similar robberies which were investigated differently because the victim *was* a member of some ill-defined "good old boy" network of Conroe residents.[6] Indeed, when asked to identify documents which show "that a victim of a crime similar to your wife's was a member of the good old boy clique," Mr. Harvey was unable to "recall the names of those documents." Deposition of Mr. Harvey, at 206. Eventually, Mr. Harvey identified two bank robberies and the robbery of a store. He further testified, however, that "there is no way to prove it. We believe it, but we can't prove it." *Id.* at 140.

The City has presented evidence, uncontroverted by Plaintiffs, which establishes that each robbery investigation is necessarily different because each robbery is different. *See* Lindon Depo., at 180. Chief Lindon testified that there are "a myriad of elements; witness description, witness identification, suspect identification, threats to the public, weapon involved, injury, so many things." *Id.* at 112. Defendant's expert, John Holmes, testified similarly that "[e]ach case stands on its own." Deposition of John Holmes (Exh. F to Response), at 65.

■ Plaintiffs have not presented evidence that differences in the manner in which the robbery of Mrs. Harvey was investigated when compared to the investigation of other crimes was based on the residence of the victim, the day of the

---

5. With reference to the allegation involving the crime occurring on Friday, Mrs. Harvey conceded in her deposition that she does not base this allegation on any facts, just a feeling that the officer had an "end-of-the-week" attitude. *See* Deposition of Mrs. Harvey, at 194.

6. Plaintiffs' evidence does not indicate that crime victims living in the City were provided with more thorough investigations. Mr. Harvey in his deposition described the CPD's investigation of the theft of financial records from the Harveys' property when they lived *in Conroe*. Although the Harveys were actually living in Conroe at the time and thus, according to Mr. Harvey's definition, were members of the "good old boy" clique, Mr. Harvey testified that the CPD officer did not "make a crime scene," did not take fingerprints, did not call for a detective, and did not solve the crime. *See* Deposition of Mr. Harvey, at 67. These are the same deficiencies on which the Harveys base their allegation that the investigation of the robbery of Mrs. Harvey was an equal protection violation resulting from Mrs. Harvey's residence outside the City.

week on which the crime occurred, or any other arbitrary factor. The City has presented a rational basis for the manner in which Mrs. Harvey's robbery was investigated, and Plaintiffs have presented no evidence which controverts the City's evidence. For this reason, Plaintiffs have failed to raise a genuine issue of material fact on this element of their equal protection claim.

**D. *Requirement That The Defendant Acted With an Improper Motive***

 To the extent that an improper motive is an essential element of an equal protection claim, Plaintiffs have failed to present evidence which raises a genuine issue of material fact. As discussed above, Plaintiffs allege that the CPD's investigation of the crime against Mrs. Harvey was inferior because Plaintiffs do not live in Conroe. Plaintiffs have not, however, presented evidence of animosity or ill will on the part of the CPD against those who do not reside in the City. Officer Dupuy and Investigator Roper have stated under oath that Mrs. Harvey's residence had no bearing on the investigation. *See* Dupuy Affidavit, ¶¶ 7–8; Roper Affidavit, ¶ 6.

Similarly, Plaintiffs' evidence regarding Officer Dupuy's abilities fails to raise a fact question regarding whether his investigation of the crime scene, even if inadequate, was motivated by improper considerations. *See, e.g., Hilton,* 209 F.3d at 1008 (whether the police were inept "doesn't matter; what matters is the absence of evidence of an improper motive").

**IV. *CONCLUSION AND ORDER***

Based on the foregoing, the Court concludes that Plaintiffs have not presented evidence which raises a genuine issue of material fact in support of their equal protection claim. The Court does not doubt that Plaintiffs were upset about the rob-bery and the loss of their $120,000. The Court also believes that Plaintiffs genuinely believe that the City's investigation was inadequate. Nonetheless, Plaintiffs have presented no evidence that the City acted arbitrarily in the manner in which it investigated the alleged robbery of Mrs. Harvey. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 41] is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**. The Court will issue final judgment by separate order.