# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-1822

JOSEPH A. LUNINI, JR.,

*Plaintiff-Appellee,*

v.

CHARLES V. GRAYEB, individually;
JOHN STENSON, individually and in
his official capacity as Chief of Police
for the City of Peoria; STUART BARDEN,
individually; and JEFFREY KICE, individually,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-3028—**Jeanne E. Scott**, *Judge.*

_____

ARGUED NOVEMBER 9, 2004—DECIDED JANUARY 18, 2005

_____

Before FLAUM, *Chief Judge*, and CUDAHY and POSNER,
*Circuit Judges*.

CUDAHY, *Circuit Judge*. Following an alleged physical
altercation with Charles Grayeb, his former boyfriend,
appellee Joseph Lunini filed suit against Grayeb and three
police officers who allegedly refused to arrest Grayeb due to

his position on the Peoria City Council. The suit alleged, among other things, that the officers' refusal to arrest Grayeb violated Lunini's equal protection rights under the Fourteenth Amendment. The district court granted in part and denied in part the defendants' subsequent motion for summary judgment, holding, *inter alia*, that the police officers' claims of qualified immunity fail because Lunini's equal protection rights were "clearly established" at the time of the incident and material questions of fact remain as to whether the police officers actually violated those rights. Appellants now appeal that ruling on the narrow question whether Lunini's equal protection rights were indeed "clearly established" for qualified immunity purposes at the time of the alleged incident.

## I. FACTS & DISPOSITION BELOW[1]

In this case we attend to the aftermath of a protracted lovers' quarrel in which, it would seem, each party has attempted to use the official machinery of the justice system to exact revenge on the other. It is emphatically not the sort of case that we relish. At all times relevant to this suit the defendant Charles Grayeb was a member of the Peoria City Council, the defendant John Stenson was the Chief of the Peoria Police Department, and the defendants Stuart Barden and Jeffrey Kice were police officers with the Peoria Police Department. Defendant Grayeb and plaintiff Joseph A. Lunini, Jr. met in June 1995. Lunini and Grayeb began a personal relationship with sexual overtones in June 1995, and they began to live together in December 1995 or January 1996. In 1997, Lunini and Grayeb moved into a single-family home at 510 West High Street (the High

---

[1] The factual material here is largely drawn from the district court's summary of the facts in its order below. *Lunini v. Grayeb, et al.*, 305 F. Supp. 2d 893, 897-904 (C.D. Ill. 2004).

Street residence) in Peoria, Illinois, which Grayeb had purchased earlier that year. Grayeb is still the record owner of the property. Lunini and Grayeb were the sole residents of the High Street residence from 1997 until June 2000, and Lunini's children would visit the residence almost every weekend.

Sometime during the first half of 2000 Lunini and Grayeb began to have major difficulties in their relationship, and by June a breakup was on the horizon. On June 27, 2000, after a City Council meeting, Grayeb met with Chief Stenson and discussed his problems with Lunini. The details of this discussion are contested, but for our purposes it is enough to note that Grayeb asked Stenson about how he might have Lunini removed from the High Street residence. Lunini claims that Grayeb later told him about this conversation and declared that the police were willing to remove Lunini at Grayeb's request, though Grayeb denies making such statements. In any event, it appears that shortly thereafter Lunini began to make arrangements to move out of the High Street residence.

Events came to a head on June 30, 2000 when Lunini went to the High Street residence at approximately 4:00 a.m., ostensibly to retrieve a few boxes from the basement and pack up some crystal that he owned. Grayeb came downstairs just as Lunini was placing his boxes in the front parlor, and a confrontation ensued. Lunini alleges that Grayeb lost his temper, swore at him, slapped him twice in the face and punched him in the face once. Lunini also reports that Grayeb told him to "go ahead and call the police," boasting that the police would not help Lunini since Grayeb was a member of the City Council. Grayeb disputes that this altercation ever occurred, but the precise details of the confrontation are immaterial to this appeal. After allegedly being struck in the face, Lunini grabbed a portable telephone, dialed 911 and went outside the house. He told the 911 operator that he had been assaulted at the High Street residence.

Defendants Barden and Kice were dispatched to the scene between 5:00 and 5:30 a.m., where they found Lunini outside the house in his bathrobe and holding a telephone. Lunini told Barden that he and Grayeb had gotten into an argument about Lunini's smoking in the house, and that while he was packing boxes Grayeb had slapped him twice and punched him in the face. Barden observed that Lunini was bleeding from his lip and had blood on his hand. Lunini also told Barden that he and Grayeb were ending a relationship and that Lunini was planning to move out. Lunini claims that Barden and Kice laughed and "made faces" when Lunini mentioned his relationship with Grayeb. After Lunini declined the defendants' offer to call an ambulance, defendant Kice told him to "go over and sit on the curb and don't leave." Barden and Kice then went to enter the house; Lunini remained sitting on the curb outside for approximately one hour.

Meanwhile, upon seeing the police cars arrive in front of the High Street residence, Grayeb called the police station and asked to have Chief Stenson paged. Grayeb claims he wanted to speak to Stenson since he was alarmed that Lunini had entered his house at 4:30 a.m. and because he did not know why the police had been summoned. Shortly thereafter, Barden and Kice entered the residence. Grayeb told Barden that Lunini was in the process of moving out and that he and Lunini had gotten into an argument about a cigarette Lunini had left in the house. Grayeb told Barden that he was unaware of Lunini's injury, and Barden observed no blood on Grayeb's person. At some point Barden and Kice also called for a sergeant to come to the High Street residence since the incident involved a man of "prestige" from the City Council. The sergeant remained there until Barden and Kice left the scene.

While Barden was inside the house, Chief Stenson returned Grayeb's earlier call. Grayeb and Stenson had a short conversation, the content of which is somewhat contested,

and then Stenson asked to speak with Barden. Barden told Stenson about Lunini's claim but said there was no physical evidence of an altercation such as overturned furniture, broken glass or torn clothes. Barden also told Stenson that he could not determine how Lunini had been injured since there were no witnesses to the incident. Stenson mentioned his June 27 conversation with Grayeb but did not ask if Lunini was the individual Grayeb had been referring to then. Stenson finally concluded that, under the circumstances, he could not determine whether a crime had been committed. He told Barden that if there was insufficient evidence to make an arrest, then he should get both parties' account of the incident, make a police report and escort Lunini off the property. Neither Kice nor Barden had ever before received a phone call from Chief Stenson at a crime scene.

Kice and Barden informed Lunini that he was to leave the High Street property or be arrested. Lunini objected that he lived at the residence and that it was Grayeb who should be arrested. After Lunini was allowed to change clothes, Kice escorted him down to the garage where Lunini relinquished his house key, gate key and garage door opener. Barden gave Lunini a domestic violence form and explained how he could obtain an order of protection if he desired one. Barden went back inside, gave a domestic violence form to Grayeb as well, and then left the residence. Lunini also left the residence, followed by two squad cars, and drove to the home of his friend Terry Ricci at 2007 North Linn in Peoria.

Peoria Police Department General Order #400.01 sets forth procedures for responding to domestic violence incidents. The Order provides that under the Illinois Domestic Violence Act, an officer is expected to handle domestic violence in a manner similar to any other crime. In a domestic violence situation, an officer is to make an arrest when probable cause exists that a felony has been committed, or that a misdemeanor or felony has been committed and the

victim has visible signs of injury. Under Section D of General Order #400.01, one of the circumstances under which an arrest is not to be made is if an officer is unable to determine if a crime has been committed.[2] Factors to consider when making an arrest include the presence of weapons at the scene, overturned furniture and another witness at the scene telling the officer someone struck the victim.

Lunini first attempted to bring criminal charges against Grayeb but was told by the Assistant State's Attorney that the case could not be brought before a jury because it was a "homo thing." Lunini then brought the instant action against Grayeb, Stenson, Barden and Kice, asserting claims under the Fourth Amendment for violation of his right to be free from unreasonable seizure, under the Fourteenth Amendment for violation of his right to equal protection of the law, under § 3604 of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, along with a state law claim for battery. Lunini's equal protection claim was advanced as a "class of one" suit, alleging an improper withdrawal of police protection based on animus toward him and/or favoritism toward Grayeb.

The defendants moved for summary judgment and on February 27, 2004, the district court entered an order granting in part and denying in part the defendants' motion. *Lunini v. Grayeb, et al.*, 305 F. Supp. 2d 893 (C.D. Ill. 2004). Among other things, the order denied the defendants' Motion for Summary Judgment on Lunini's equal protection

---

[2] The record reveals that Barden has in the past arrested both males and females at crime scenes where an injured party accused a non-injured party of physical violence. The record also shows that the breakdown of male arrests to female arrests in domestic violence situations is 70 percent to 30 percent. Barden has also responded to domestic violence calls in which he did not make an arrest, even though he observed a physical injury and the injured person stated someone had hit him.

claims. In so holding, the district court rejected the police officers' claims of qualified immunity, ruling that Lunini's equal protection right to be free from deliberate withdrawal of police protection for purely personal reasons was "clearly established" under relevant legal precedents, and that material questions of fact remained as to whether the police officers had violated this right. *Id.* at 910-12.

On March 11, 2004, the appellants filed a motion asking the court to reconsider this part of its order. On March 12, 2004, Lunini filed a Motion to Amend Judgment asking that the district court deny appellants summary judgment on his Fair Housing Act and Fourth amendment claims. The latter motion is apparently still pending in the district court. On March 29, 2004, the appellants filed their Notice of Appeal in the district court, and the district court stayed all deadlines to respond to both parties' post-order motions. To facilitate their appeal, the appellants withdrew their motion to reconsider on May 14, 2004. The appellants' appeal now comes before this Court, presenting a single narrow legal issue: whether the district court erred in ruling that Lunini's equal protection rights were "clearly established" for qualified immunity purposes at the time of the incident in question.

## II.  JURISDICTION

Before proceeding to the merits of this appeal, we must clear away some jurisdictional underbrush. The jurisdiction of the district court rested on 28 U.S.C. §§ 1331, 1343 and 1367(a). Lunini argues that we lack jurisdiction over the instant appeal because (1) the appellants have violated Circuit Rule 28(a)(3) by not alerting us to Lunini's March 12, 2004 Motion to Amend Judgment which is still pending before the district court and (2) the district court determined that material issues of fact remain with respect to this claim, precluding appellate review. Both of these contentions can be disposed of in fairly short order.

### A. Violation of Circuit Rule 28(a)(3)

Circuit Rule 28(a)(3) provides, *inter alia*, that if an appeal "is from an order other than a final judgment which adjudicates all of the claims with respect to all parties, counsel shall provide the information necessary to enable the court to determine whether the order is immediately appealable," including a description of "any claims or parties [that] remain for disposition in the district court." This provision is intended to prevent unnecessary serial appeals by helping the appellate court to identify outstanding legal issues or claims that might obviate the need for an immediate interlocutory appeal. Lunini argues that we lack jurisdiction over the instant appeal since the appellants' brief did not mention Lunini's pending Motion to Amend Judgment. (Motion, Mar. 12, 2004, Supp. App. 4.)

This argument is misdirected. Lunini's pending Motion to Amend requests summary judgment on Lunini's Fourth Amendment unreasonable search and seizure claims and on his Fair Housing Act sexual harassment claims—claims wholly unrelated to the discrete legal issue raised in the instant appeal. (*See* Motion, Mar. 12, 2004, Supp. App. 4.) While Lunini asserts that the appellants advance a qualified immunity defense to these two claims, the legal and factual issues implicated by those claims remain distinct from the ones presented by this appeal. In short, even conceding that the appellants failed to advise us of Lunini's pending Motion in violation of Local Rule 28(a)(3), there is no basis for believing that a district court ruling on this Motion would obviate the need for the instant appeal.

More to the point, Circuit Rule 28 is not jurisdictional. Notwithstanding Lunini's warning about the "specter of serial interlocutory appeals," (Appellee's Br. at 3 (citing *Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123 (7th Cir. 1997); *U.S. v. Daniels*, 848 F.2d 758 (7th Cir. 1988))), the U.S. Supreme Court has expressly rejected a "one-inter-

locutory-appeal rule." *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996). Thus while Lunini may be correct that "Appellants' brief is incomplete," and while it may be within our discretion to sanction such an omission, it cannot be said that we lack jurisdiction to hear the instant appeal.

### B. Remaining Questions of Material Fact

Lunini next claims that we lack jurisdiction over the instant appeal since the district court's denial of summary judgment as to the appellants' qualified immunity defense was based on its conclusion that material issues of fact remain for trial. Of course, it is undeniably true that the district court so ruled: "[T]here are triable issue of fact as to whether Defendants deprived Lunini of police protection out of an illegitimate animus and improper motive toward Lunini, and for reasons unrelated to any legitimate state objective." (D.C. Order at 39 (citing *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007-08 (7th Cir. 2000).).) Nonetheless, such a determination does not thwart our jurisdiction to review the purely legal question whether, at the time of the appellants' alleged misconduct, the law was clearly established that refusal to arrest Grayeb due to his position as a city councilman constituted selective withdrawal of police protection in violation of the Equal Protection Clause.

While we may not review a denial of qualified immunity where doing so "would require [the Court] to decide a material issue of fact," *Omdahl v. Lindholm*, 170 F.3d 730, 734 (7th Cir. 1999); *Bell v. Deparrault*, 367 F.3d 703 (7th Cir. 2004); *Egebergh v. Nicholson*, 272 F.3d 925 (7th Cir. 2001), our precedents do not foreclose appellate review of purely legal questions. The Supreme Court's decision in *Mitchell v. Forsyth*, 472 U.S. 511 (1985), confirms that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwith-

standing the absence of a final judgment." *Id.* at 530. *See also Behrens v. Pelletier*, 516 U.S. 299, 311 (1996) ("an order denying qualified immunity, to the extent it turns on an 'issue of law,' is immediately appealable.") (citations omitted). In fact the *Mitchell* decision validates interlocutory review of the precise legal issue raised in the instant appeal:

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. *All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions* or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

*Mitchell*, 472 U.S. at 528 (emphasis added).[3]

In the present case, the district court's summary judgment ruling turned on both a factual determination (that questions of material fact remain as to the police officers' reasons for refusing to arrest Grayeb) and a legal determination (that the law regarding class of one equal protection claims is clearly established and could have been violated by the police officer's alleged conduct). 305 F. Supp. 2d at 910-12. Under *Mitchell* and its progeny, we may review the latter determination but not the former since, if the rule of

---

[3] The Court's later ruling in *Johnson v. Jones*, 515 U.S. 304 (1995), cited by this Court in *Omdahl*, does not disturb this baseline rule but merely clarifies that summary judgment orders denying qualified immunity defenses are not reviewable *insofar as* such review requires resolution of factual questions.

law on which Lunini relies was not clearly established at the time of appellants' alleged misconduct, this Court may grant the police officers qualified immunity and dispose of Lunini's equal protection claims without "resolv[ing] any factual disagreements." *Tangwall v. Stuckey*, 135 F.3d 510, 515 (7th Cir. 1998). *See also Saucier v. Katz*, 533 U.S. 194, 202 (2001) (verifying that summary judgment is appropriate where the alleged constitutional rights are not clearly established).

Having validated our jurisdiction, pursuant to 28 U.S.C. § 1291, to consider the narrow legal question presented by this appeal, we now turn to the merits.

## III. DISCUSSION

Lunini alleges that police officers Stenson, Barden and Kice failed to arrest Grayeb during the incident in question solely because Grayeb was a member of the Peoria City Council. Lunini claims that, in so doing, they impermissibly withdrew police protection from him in violation of his equal protection rights under a so-called "class of one" theory. We have recognized on several occasions that "[a] class of one equal protection claim may be brought where (1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). *See also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Nevel v. Vill. of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002); *but see Bell*, 367 F.3d at 709-10 (Posner, J., concurring); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) (rejecting the "no rational basis" approach since "[i]f a merely unexplained difference in police treatment of similar complaints made by different people established a prima

facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws.").

The police officers respond that, at the time of the alleged incident, the law was not "clearly established" with respect to Lunini's alleged rights under the circumstances and thus that they are entitled to summary judgment on grounds of qualified immunity. In its most basic formulation, the doctrine of qualified immunity provides that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v, Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). More than this, it is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526. Accordingly where, as here, a "defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier*, 533 U.S. at 200-01 (quotations and citation omitted).

In denying the appellants' motion for summary judgment on Lunini's class of one equal protection claim, the district court held that Lunini had indeed alleged violation of a clearly established constitutional right: "[A]ction depriving a citizen of police protection at the purely personal request of a government official [as Lunini alleges[4]] was unrelated

---

[4]  In considering a motion for summary judgment, a court must consider all evidence in the light most favorable to the non-moving
(continued...)

to any legitimate state objective, and denied the citizen the right to equal protection of the law." 305 F. Supp. 2d at 911 (citing *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000) and *Village of Willowbrook v. Olech*, 160 F.3d 386 (7th Cir. 1998)). We review rulings on motions for summary judgment *de novo. Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999). Summary judgment is warranted when the evidence, when viewed in a light most favorable to the non-moving party, presents "no genuine issue as to any material fact" such that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Because we believe the district court's ruling on this issue was erroneous, we reverse.

The touchstone of the qualified immunity inquiry is an alleged violation of "clearly established" statutory or constitutional rights. Under this standard, we must first determine whether the conduct, as alleged, violates a constitutional or statutory right in the first place; second, the Court must determine whether the right in question was "clearly established" at the time of the alleged misconduct. *Saucier*, 533 U.S. at 200-01. The Supreme Court has elaborated on the second prong of this test as follows:

> This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . . the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *The relevant, dispositive*

---

[4] (...continued)
party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The district court did so below.

> *inquiry in determining whether a right is clearly es-*
> *tablished is whether it would be clear to a reasonable*
> *officer that his conduct was unlawful in the situation he*
> *confronted.*

*Id.* (internal citations and quotations omitted). The plaintiff bears the burden of establishing that a given right is "clearly established," *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993), and to do so the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right. *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997). However, "liability is not predicated upon the existence of a prior case that is directly on point." *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996).

Before we address the claims presented on their own terms, we pause to note that Lunini's allegations probably do not satisfy even the first prong of the test outlined in *Saucier.* That is, it is difficult to discern any equal protection violation in the circumstances of this case since Lunini has not demonstrated that he suffered unequal treatment— the essence of an equal protection violation is, after all, *discrimination* of some sort.[5] We have previously held that a class of one claim must fail where the plaintiff has "failed to identify someone who is similarly situated but intentionally treated differently than he." *McDonald*, 371 F.3d at 1002. Lunini has presented no evidence that the police officers treated him differently than other citizens in the context of domestic violence incidents. Lunini identifies no

---

[5] Of course the law must provide some remedy for extreme abuses of power by public officials. However, absent some comparative showing of discrimination among similarly situated individuals or classes of individuals, such a remedy cannot be obtained via the Equal Protection Clause.

similarly situated individual who has been treated differ-
ently by Peoria police, and there is no indication that the
Peoria Police Department *always* arrests an alleged assail-
ant when responding to a domestic violence report—indeed
we would be surprised and alarmed if this were the case. To
the contrary, the district court notes that at least one of the
appellants has in the past "responded to domestic violence
calls in which he did *no*t make an arrest, even though he
observed physical injury, and the injured person stated that
someone else had hit him." 305 F. Supp. 2d at 904 (emphasis
added). Lunini's invocation of Peoria Police Department
General Order #400.01 (setting forth the procedures for
responding to domestic violence reports) on this score is
unavailing. The provisions of that Order do not create any
explicit *duty* to arrest Grayeb under the circumstances, and
we have previously held that class of one arguments based
on internal government rules or standard operating proced-
ures are insufficient—a plaintiff must show that another
similarly situated individual was in fact treated differently.
*See McDonald*, 371 F.3d at 1002-05 (holding insufficient
a class of one claim premised on local fire department's
deviation from its established procedures for investigating
house fires).

In short, it is far from clear that this incident involved
anything other than an ordinary exercise of police discre-
tion, and as such it is not obvious how the police officers'
failure to arrest Grayeb on June 30, 2000 implicates Lunini's
rights under the Equal Protection Clause in the first place.[6]

---

[6] We are cognizant of the fact that, as a general matter, whether
individuals are similarly situated is a factual question for the
jury. *See Harlen Assoc. v. Vill. of Mineola*, 273 F.3d 494, 499 n. 2
(2d Cir. 2001). However, where it is clear that no reasonable jury
could find that the similarly situated requirement has been met,
a grant of summary judgment is appropriate. *Id.*; *McDonald*, 371
(continued...)

On a similar note, we also question whether, on a purely factual level, Lunini has alleged an actual withdrawal of police protection. There is no allegation that Grayeb posed a continuing danger to Lunini when the police arrived at the scene, and the facts suggest no threat of renewed assault or conflict. Under the circumstances encountered by the police officers at the time, it would be difficult to say that failing to arrest Grayeb amounted to a withdrawal of physical *protection* in any meaningful sense.

In any event, we need not rest our decision on these general reservations since, even assuming that Lunini's allegations present a cognizable class of one equal protection violation, we cannot say that the law on this matter was "clearly established" at the time of the incident. As of June 30, 2000, there were three central class of one equal protection precedents prevailing in this circuit, each of which differs in important respects from the instant case. The first is *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995), in which we held that the plaintiff had stated a valid legal claim under the Equal Protection Clause by alleging that he was unable to renew his liquor license because of the ill will of local municipal officials—"an orchestrated campaign of official harassment directed against him out of sheer malice." We explained that, while a valid equal protection claim does not require "a deprivation of life, liberty, or property," it does require "that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' [plaintiff] for reasons wholly unrelated to any legitimate state objective." *Id.* at 180. In the instant

---

[6]  (...continued)
F.3d at 1002 (affirming a grant of summary judgment where plaintiff failed to present a triable issue as to whether he was "similarly situated" to comparators); *Bell*, 367 F.3d at 709-10 (same); *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455-56 (7th Cir. 2002) (same).

case, aside from the fact that the official activity at issue is entirely different from the licensing procedures implicated in *Esmail*, it is not alleged that defendant police officers bore any malice toward Lunini, much less engaged in an "orchestrated campaign" to "get" him. *Esmail* thus provides no guidance to defendant police officers with respect to the specific situation they faced in the June 30, 2000 incident.

The next case, *Olech v. Village of Willowbrook*, originally came before this Court and was subsequently affirmed by the Supreme Court. That case involved an allegation that municipal authorities demanded an unusually large ease-ment over plaintiff's property and shut off plaintiff's water for three months because of ill will generated by her earlier (victorious) lawsuit against the city. In our handling of that case, we noted that, unlike *Esmail*, the case "was not one of uneven enforcement," and we declared that a municipality could be held liable for failure to provide basic services: "The Village does not deny that it has a legal obligation to provide water to all its residents. If it refuses to perform this obligation for one of the residents, for no other reason than a baseless hatred, then it denies that resident the equal protection of the laws." 160 F.3d 386, 388 (7th Cir. 1998). On appeal, the Supreme Court affirmed under an even broader standard, declaring that class of one equal protection claims are valid where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000) (per curiam). The Court expressly declined to reach the "alterna-tive theory of 'subjective ill will'" upon which our decision was based. *Id.* at 565.[7] Here again, the instant case is dis

---

[7] Justice Breyer wrote separately to concur, noting his concern that, absent an allegation of ill will on the part of the government, such a broad "rational basis" standard could "transform[ ] run-of-
(continued...)

tinguishable based both on the nature of the government services at issue and the absence of ill will (much less a "baseless hatred") toward the plaintiff. Of course, the Supreme Court suggests that unequal treatment based on mere irrationality could suffice to overcome a qualified immunity defense, but given the circumstances of the incident at issue in the instant case, it would be difficult to charge defendant police officers with notice of a clearly established constitutional right based on such an open-ended pronouncement in a case arising under completely different facts.

The final case, *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000), decided just over one month before the incident at issue in the instant case, comes closest to providing the required notice. *Hilton* involved an action under 42 U.S.C. § 1983 alleging that city police were unfair in responding to complaints among neighbors. Specifically, the plaintiff in *Hilton* alleged that local police arrested him several times in response to complaints from his neighbors (for battery, disorderly conduct and noise violations), but they did not respond similarly to his own complaints against those neighbors. We held that plaintiff had failed to present a valid equal protection claim since he had presented no evidence of improper police animus against him, but merely alleged uneven enforcement of local laws. *Id.* at 1007-08. We explained that "[i]f the police decided to withdraw all protection from [plaintiff] out of sheer malice, or because they had been bribed by his neighbors, he would state a claim under *Olech*," but "the absence of evidence of an improper motive" is decisive. *Id.* at 1008. We concluded by summarizing that "to make out a prima facie case [for a class of one equal protection violation] the plaintiff must

---

[7] (...continued)
the-mill zoning cases into cases of constitutional right." *Olech*, 528 U.S. at 566 (Breyer, J., concurring).

present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Id.*

Clearly, *Hilton* comes closest to the instant case. It involves allegations of unequal police response to complaints by local residents; additionally, its dictum regarding actions taken "for reasons of a personal nature unrelated to the duties of the defendant's position" arguably echo Lunini's claims with respect to the defendant police officers' motivations for refusing to arrest Grayeb. Nonetheless, the key word here is "arguably"; *Hilton* still differs significantly from the instant case. Unlike *Hilton*, where it was clear that the plaintiff was being treated differently from his neighbors, it is unclear that such is the case here. Additionally, we are mindful of the fact that our actual holding in *Hilton* ultimately vindicated the police officers' claims of qualified immunity, and the language which arguably encompasses Lunini's claims is pure dicta. We acknowledge that "liability is not predicated upon the existence of a prior case that is directly on point," *Nabozny*, 92 F.3d at 456, yet nonetheless "[t]he contours of the right [at issue] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 200-01. However suggestive our dicta in *Hilton*, we are instructed to conduct the "clearly established" inquiry from the defendant-official's perspective, and in this light, a claim in a factually dissimilar case which ultimately fails to survive a qualified immunity defense cannot be said to sufficiently define "the contours of the [purported] right" to any significant degree. Indeed the precise contours of class of one equal protection rights continue to elude some of this circuit's most capable judges. *See Bell v. Duperrault*, 367 F.3d 703, 709 (7th Cir. 2004) (Posner, J., concurring) (noting that there is lingering uncertainty regarding the legal standard applicable to class of one cases).

Certainly Lunini is unhappy with defendant police officers' response to the incident at the High Street residence. However, on this record it appears highly doubtful that any alleged police misjudgments (if misjudgments there were) took on constitutional proportions. While we take pains to affirm the baseline principle that police support and protection must be afforded to all citizens on a non-discriminatory basis, we decline to take the unprecedented step of implying a general constitutional police *duty* to arrest certain individuals during a response to an isolated domestic incident. Such a ruling would threaten to turn every police house call into a potential federal constitutional lawsuit. *Cf. Olech*, 528 U.S. at 565-66 (Breyer, J., concurring) (warning against a rule that "would transform many ordinary violations of city or state law into violations of the Constitution").

## IV. CONCLUSION

We are persuaded that, under the circumstances of the instant case, an ordinary police officer could not know that he or she risked violating Lunini's civil rights by failing to arrest Grayeb. Accordingly, we must conclude that the equal protection rights alleged to have been violated in the instant case were not clearly established at the time of the incident at the High Street residence. The order of the district court regarding defendant police officers' claims of qualified immunity is accordingly REVERSED and the case REMANDED with instructions to enter summary judgment in favor of defendants Stenson, Kice and Barden with respect to Lunini's class of one equal protection claim.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*