[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 674 
 On Application for Rehearing
The opinion of this court issued on September 7, 2001, is withdrawn, and the following is substituted therefor.
In October 1999, Cathy McCord-Baugh sued the Birmingham City Board of Education and the individual members of the Board (hereinafter referred to collectively as the "Board"), alleging that the Board had breached its contract of employment with her and that the Board had violated her constitutional right of equal protection. She sought damages pursuant to 42 U.S.C. § 1983 and a judgment declaring that the Board had violated its policies and procedures by improperly classifying her on the "special-projects-coordinator" salary schedule instead of the "community-school-coordinator" salary schedule, which she alleges is the proper salary schedule. The Board filed a motion for a summary judgment, which the trial court granted. McCord-Baugh was hired in 1989 as a "special-projects coordinator." She achieved tenure in 1992. In 1992, she was transferred to Parker High School, where she replaced the outgoing community-school coordinator. She alleged in her complaint that the Board never properly classified her on the salary schedule for a community-school coordinator.
She alleges that in not classifying her as a community-school coordinator and not paying her pursuant to the community-school-coordinator pay schedule the Board violated her constitutional right of equal protection and also failed to follow its own policies and procedures. We will address the equal-protection issue first. Because the trial court did not issue an opinion stating its grounds for entering the summary judgment, McCord-Baugh's brief on appeal necessarily addresses numerous issues in an effort to show that none of the grounds for summary judgment urged by the Board were viable.
The Board argued before the trial court that the equal-protection claim was barred by the applicable statute of limitations. It argues that McCord-Baugh's *Page 675 
equal-protection claim brought under 42 U.S.C. § 1983 would have accrued in 1992 when, McCord-Baugh alleges, she became a community-school coordinator. Our Supreme Court has held that a § 1983 action is subject to a two-year statute of limitations.Morrow v. Town of Littleville, 576 So.2d 210 (Ala. 1991). However, when an equal-protection claim involves an ongoing or "continuing violation," the violation is deemed to continue for statute-of-limitations purposes every day that it occurs. See,e.g., Thigpen v. Bibb County, Georgia, Sheriff's Dep't,223 F.3d 1231, 1243 (11th Cir. 2000) (equal-protection case applying "continuing violation" doctrine recognized in Calloway v.Partners Nat'l Health Plans, 986 F.2d 446, 449 (11th Cir. 1993) (holding that "[w]hen the claim is one for discriminatory wages, the violation exists every single day the employee works," and under the "continuing-violation" doctrine, the statute of limitations does not begin to run at the start of the unlawful practice)). The trial court's entry of a summary judgment therefore could not properly have been based upon a statute-of-limitations bar.
The Board also argued before the trial court, however, that McCord-Baugh failed to create a genuine issue of fact with respect to at least one of the substantive elements of her equal-protection claim. To state an equal-protection claim, McCord-Baugh must have alleged and shown that she was (1) treated differently from similarly situated persons and (2) that the Board treated her differently for the purpose of discriminating against her on an impermissible basis. See GJR Investments, Inc.v. County of Escambia, Florida, 132 F.3d 1359, 1367 (11th Cir. 1998); Strickland v. Alderman, 74 F.3d 260, 264-65 (11th Cir. 1996); E T Realty v. Strickland, 830 F.2d 1107, 1109, 1112-13 (11th Cir. 1987). We will address the latter requirement.
McCord-Baugh must show that any differential treatment she received from the Board was motivated by an intention to discriminate on an impermissible basis. E T Realty, 830 F.2d at 1113. In other words, in order to satisfy the second requirement for an equal-protection claim and to prevail, a showing of intentional discrimination is required.
A showing of unequal treatment of similarly situated persons does not establish an equal-protection claim, absent proof that the defendant acted with discriminatory intent. Id.
Discriminatory impact, without more, does not violate the Equal Protection Clause. Washington v. Davis, 426 U.S. 229,96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).
McCord-Baugh responds to the Board's argument in this regard merely by arguing that there is "record evidence that this unequal treatment — paying McCord-Baugh less than others who perform the same job — has been intentional on the part of defendants." However, it is not the intent to do a given act that is required in order to satisfy the second element of an equal-protection claim; it is the intent to discriminate that is required. "`Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part `because of,' not merely `in spite of,' its adverse effects upon an identifiable group."Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279,99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (citation omitted; footnote omitted); see also Jones v. White, 992 F.2d 1548, 1573 (11th Cir.), cert. denied, 510 U.S. 967, 114 S.Ct. 448, 126 L.Ed.2d 381
(1993).
We do not find substantial evidence in the record of an intent by the defendants *Page 676 
to discriminate against McCord-Baugh on the basis of her race, her gender, or any other impermissible ground. Rather, the defendants have shown legitimate, nondiscriminatory reasons for their decision not to pay McCord-Baugh as a community-school coordinator. Accordingly, we affirm the trial court's summary judgment in favor of the defendants with respect to McCord-Baugh's equal-protection claim.
Turning now to McCord-Baugh's claim that the Board violated its own policies and procedures. Initially, we note that McCord-Baugh argues that summary judgment was not appropriate on the basis of the applicable statute of limitations because, she contends, the applicable statute of limitations was 10 years under Ala. Code 1975, § 6-2-33(3). Section 6-2-33(3) applies a 10-year statute of limitations to actions against certain public officials "for nonfeasance, misfeasance, or malfeasance in office." In McMillanv. Lee, 655 So.2d 906 (Ala. 1994), a former lieutenant governor filed an action seeking an order directed to the secretary of the senate, the state comptroller, and the director of the state finance department ordering payment of the monthly expense allowance of $1,500 to which he was entitled as a matter of state law. The action was one to compel public officers to perform "legal duties." See also Gunter v. Beasley, 414 So.2d 41, 48
(Ala. 1982) (holding that the lieutenant governor's claim seeking payment of monthly expense allowances was not barred by Art. 1, §14 Ala. Const. of 1901 (sovereign immunity) because it was an action brought to compel state officials to perform their legal duties and to enjoin state officers who have acted under a mistaken interpretation of law). The action in McMillan v. Lee
was therefore an action against a public officer for nonfeasance or misfeasance under § 6-2-33(3). McMillan, supra. The present action is not, but is instead a contract action. As such, it is governed by the six-year statute of limitation contained in Ala. Code 1975, § 6-2-34. See also Nathan Rodgers Constr. Realty Corp. v. City of Saraland, 670 F.2d 16 (5th Cir. 1982) (rejecting application of 10-year statute of limitations to § 1983 claim against public officers).
McCord-Baugh argues that, even if the 10-year statute of limitations is inapplicable, the 6 year statute of limitations under § 6-2-34, Ala. Code 1975, would not bar her recovery for breaches of contract from 1993 to the time of the commencement of her action in 1999. See Ala. Code 1975, § 6-2-34. Although this argument is correct insofar as it goes, we conclude that McCord-Baugh's contract claims with respect to the years 1993 to 1999 are not viable for other reasons. Specifically, upon review of McCord-Baugh's brief in support of her application for rehearing and further study of Judge Murdock's special writing to this court's opinion of September 7, 2001, concurring in the result reached in that opinion, we conclude that Judge Murdock correctly analyzed the issues and stated the law applicable to this case as follows:
Our courts have held that the adoption by an employer of policies and procedures may, under appropriate facts, give rise to implied contractual terms of employment between the employer and the employee. The question turns on traditional contract-law principles of offer, acceptance, and consideration. InHoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala. 1987), our Supreme Court explained:
 "`To the extent that courts have seen the rule as one of substantive law rather than construction, they have misapplied language and principles found in earlier cases where the courts were merely attempting to discover and implement the intent of the parties.' *Page 677 
". . . .
 "`Whether a handbook can become part of the employment contract raises such issues of contract formation as offer and acceptance and consideration.
"`. . . .
 "`If the handbook language constitutes an offer, and the offer has been communicated by dissemination of the handbook to the employee, the next question is whether there has been an acceptance of the offer and consideration furnished for its enforceability. In the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. . . . The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer.'"
512 So.2d at 731 (quoting Toussaint v. Blue Cross BlueShield, 408 Mich. 579, 600, 292 N.W.2d 880, 885 (1980), andPine River State Bank v. Mettille, 333 N.W.2d 622, 625-27
(Minn. 1983)) (emphasis added).
The Supreme Court further observed:
 "In Louis Werner Sawmill Co. v. Vinson Bolton, 220 Ala. 210, 124 So. 420 (1929), it was recognized that, although a unilateral contract that is wholly executory lacks mutuality and is unenforceable, to the extent the agreement has been performed by the promisee it is binding and enforceable:
 "`[W]here one party performs in reliance upon such an agreement, his performance raises, to its extent, a new consideration for the promise of the other.'
". . . .
 "The foregoing considered, we see no reason why a policy contained in an employee manual issued to an employee cannot become a binding promise once it is accepted by the employee through his continuing to work when he is not required to do so."
Hoffman-La Roche, 512 So.2d at 732-33.
The same principles govern as to contractual terms implied between school boards and their employees. Thus, a public-school board's adoption of policies and procedures known to and relied upon by an employee may, under appropriate facts, give rise to implied contractual terms of employment between the school board and the employee. Consistent with the principles outlined inHoffman-La Roche, our Supreme Court held in Kohen v. Board ofSchool Comm'rs of Mobile County, 510 So.2d 216 (Ala. 1987), that a school-board employee could maintain a breach-of-contract claim against the school board for the board's refusal to follow its own sick-leave policy. In holding that the employee's claim was viable, the court explained that
 "when the school board adopted the sick leave policy and published notice of that policy to its employees, the policy became specifically enforceable under the doctrine of Belcher v. Jefferson County Bd. of Educ., 474 So.2d 1063 (Ala. 1985)."
510 So.2d at 218. The court also explained that
 "[i]t appears that a substantial number of the Board's employees relied on the notice published in the system's newsletter [and] that the Board made no great attempt to notify those employees of its reconsideration of the policy. . . ."
510 So.2d at 219. Cf. Walker County Bd. of Educ. v. WalkerCounty Educ. Ass'n, 431 So.2d 948, 953 (Ala. 1983) (upholding declaratory judgment in favor of employee associations, rejecting school board's position that its own reduction-in-force policies *Page 678 
amounted to impermissible collectively bargained agreements, and also noting that the policies in question were "publicly filed" and "had been adopted and in effect two years" before the board attempted to disavow them).
In Belcher, our Supreme Court upheld breach-of-contract claims by two employees against the Jefferson County Board of Education. The board policy in question — an employee evaluation/termination policy — had been in place throughout the respective two- and three-year terms of the plaintiffs' employment. 474 So.2d at 1064.
Furthermore, in Belcher, as in other cases upholding breach-of-contract claims against school boards for violation of their policies, the plaintiffs brought suit upon first receiving notice that the policies in question would not be followed. Neither plaintiff in Belcher communicated an "acceptance" of the employer's position by continuing to work for the school board or accepting reemployment after learning that the written policy in question was not being "offered" as part of her employment arrangement. See also, e.g., Beverly v. Board of Sch.Comm'rs of Mobile County, 678 So.2d 113 (Ala.Civ.App. 1995) (suit filed upon receipt of notice that the policy in question would not be followed by the school board); Baker v. OneontaCity Bd. of Educ., 519 So.2d 1350 (Ala.Civ.App. 1987) (suit filed upon failure of school board to follow its policy); Kohen,supra; cf. Walker County Bd. of Educ. v. Walker County Educ.Ass'n, supra (declaratory-judgment action filed at time of first refusal of board to follow its policies).
Neither Belcher nor any of our other relevant precedents creates an independent, per se cause of action in favor of an employee against a school board merely for violations of a school board's policies and procedures. The claims against Alabama school boards that have been upheld in this regard have been based upon some other underlying theory, most commonly breach of contract. See, e.g., Belcher, 474 So.2d at 1064-65 (noting that the plaintiff "filed suit . . . alleging breach of contract and violation of his constitutional rights, in that the Board failed to follow the procedures" in question (emphasis added));cf. Steiger v. Huntsville City Bd. of Educ., 653 So.2d 975
(Ala. 1995) (rejecting argument that school-board policy satisfied elements necessary for an implied contract between teacher and board). See also, e.g., Mitchell v. Jefferson CountyBd. of Educ., 936 F.2d 539 (11th Cir. 1991) (recognizing, for example, a possible claim under the federal Equal Pay Act).
In the present case, the employee remained in her job year after year, knowing that she had not been, and was not to be, placed in the "higher" position she now seeks through her lawsuit. Under such facts, the applicable contract-law principles operated against the employee. The terms of the contract into which she entered every year cannot be implied to be more than those that, year after year, she repeatedly was "offered" and repeatedly "accepted." See also § 16-24-12, Ala. Code 1975. Because the employee's underlying breach-of-contract claim is not viable, she cannot be entitled to any of the remedies — including monetary damages, injunctive relief, and declaratory relief — that she seeks based upon that claim.
The summary judgment for the defendants is affirmed.
OPINION OF SEPTEMBER 7, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur. *Page 679