894 So.2d 679 (2004)
Ex parte Cathy McCORD-BAUGH.
(In re: Cathy McCord-Baugh
v.
Birmingham City Board of Education et al.)
1011067.
Supreme Court of Alabama.
April 2, 2004.
*680 Sam Heldman of Gardner, Middlebrooks, Gibbons & Kittrell, Washington, D.C.; J. Cecil Gardner of Gardner, Middlebrooks, Gibbons & Kittrell, Mobile; and Frederick L. Fohrell and Robert C. Lockwood of Wilmer & Lee, P.A., Huntsville, for petitioner.
Kenneth L. Thomas, Valerie L. Acoff, James L. Richey, and Joi C. Scott of Thomas, Means, Gillis & Seay, P.C., Birmingham, for respondents.
JOHNSTONE, Justice.
The plaintiff-petitioner Cathy McCord-Baugh properly invoked our Rule 39(a)(1)(D), Ala. R.App. P., certiorari jurisdiction to determine whether the decision of the Court of Civil Appeals in her case, McCord-Baugh v. Birmingham City Board of Education, 894 So.2d 672 (Ala.Civ.App.2002), conflicts with the decision of the United States Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Accordingly, to review that one claim, we granted her petition for a writ of certiorari. Having reviewed the record and considered the law, we reverse and remand.

Procedural Facts
The plaintiff sued the Birmingham City Board of Education, the superintendent of education of the Birmingham City Schools, and the individual members of the Board of Education. The narrow scope of our certiorari review reaches only the plaintiff's claim, under 42 U.S.C. § 1983, that the defendants violated the plaintiff's right to the equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. She alleged that the defendants intentionally treated her differently from, by paying her less than, others similarly situated. She asserted that the dissimilar treatment of her  the continuing refusal to pay her equally  was arbitrary and capricious and was not rationally related to any legitimate governmental purpose.
The defendants moved for summary judgment on multiple grounds. As stated in the motion for summary judgment, the only ground pertinent to our review reads:
"Plaintiff's equal protection claim brought pursuant to the Fourteenth Amendment of the United States Constitution must fail as a matter of law because a public official cannot violate a Plaintiff's equal protection rights unless the Defendant has the intent to discriminate. Parks v. City of Warner Robbins, Georgia, 42[43] F.3d 609, 616 (11th Cir.1995); Mencer v. Hammond [Hammonds], 134 F.3d 1066, 1070 (11th Cir.1998). Plaintiff has not alleged or presented facts evidencing proof of the requisite intent to discriminate."
This ground asserts, in essence, that, in the absence of intent to discriminate, arbitrary and capricious differential treatment does not violate the Fourteenth Amendment. This ground does not deny that the defendants' treatment of the plaintiff was arbitrary, capricious, and not rationally related to any legitimate governmental purpose. The plaintiff responded, in pertinent part:
"Plaintiff's first cause of action is violation of her ... Federal equal protection rights caused by defendants' `irrational and wholly arbitrary' refusal to pay plaintiff the same as similarly situated *681 Community School Coordinators. The facts are undisputed in this case that Plaintiff is paid less `a different salary arrangement' than other similarly situated community school coordinators and thus Plaintiff meets the prima facie case for violation of Federal . . . equal protection rights. Village of Willowbrook v. Olech, [528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)] . . . ."
The trial court granted the defendants summary judgment on all of the plaintiff's claims. She appealed. Affirming the judgment of the trial court, the Court of Civil Appeals held, in pertinent part:
"To state an equal-protection claim, McCord-Baugh must have alleged and shown that she was (1) treated differently from similarly situated persons and (2) that the Board treated her differently for the purpose of discriminating against her on an impermissible basis. See GJR Investments, Inc. v. County of Escambia, Florida, 132 F.3d 1359, 1367 (11th Cir.1998); Strickland v. Alderman, 74 F.3d 260, 264-65 (11th Cir.1996); E & T Realty v. Strickland, 830 F.2d 1107, 1109, 1112-13 (11th Cir.1987). We will address the latter requirement.
"McCord-Baugh must show that any differential treatment she received from the Board was motivated by an intention to discriminate on an impermissible basis. E & T Realty, 830 F.2d at 1113. In other words, in order to satisfy the second requirement for an equal-protection claim and to prevail, a showing of intentional discrimination is required.
"A showing of unequal treatment of similarly situated persons does not establish an equal-protection claim, absent proof that the defendant acted with discriminatory intent. Id. Discriminatory impact, without more, does not violate the Equal Protection Clause. Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).
"McCord-Baugh responds to the Board's argument in this regard merely by arguing that there is `record evidence that this unequal treatment  paying McCord-Baugh less than others who perform the same job  has been intentional on the part of defendants.' However, it is not the intent to do a given act that is required in order to satisfy the second element of an equal-protection claim; it is the intent to discriminate that is required. '"Discriminatory purpose" . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.' Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (citation omitted; footnote omitted); see also Jones v. White, 992 F.2d 1548, 1573 (11th Cir.), cert. denied, 510 U.S. 967, 114 S.Ct. 448, 126 L.Ed.2d 381 (1993).
"We do not find substantial evidence in the record of an intent by the defendants to discriminate against McCord-Baugh on the basis of her race, her gender, or any other impermissible ground. . . ."
McCord-Baugh, 894 So.2d at 675-76. These holdings are the only holdings in the opinion of the Court of Civil Appeals deciding adversely to the plaintiff an equal-protection issue raised by the defendants' motion for summary judgment. The Court of Civil Appeals further held, without a supporting ground in the defendants' motion for summary judgment, that the defendants had shown legitimate, nondiscriminatory reasons for their decision not *682 to pay the plaintiff as a community-school coordinator.

Substantive Facts
In November 1989, the Board of Education hired the plaintiff as a "special-projects coordinator." She signed a one-year employment contract. The Board of Education continued employing her. In 1992, she became tenured. The same year, the Board of Education transferred her to Parker Community School to replace the "community-school coordinator" for Parker Community School. Since 1992, the plaintiff has performed the duties of a community-school coordinator. She supervises the same number of employees as any other community-school coordinator and prepares the same community educational program as any other community-school coordinator. Her service area is comparable to the other community-school coordinators' service areas.
The plaintiff's performance evaluations identify her position as a "Coordinator" in the division titled "Parker Community School." Before her transfer in 1992, an organizational chart showed 11 community-school coordinators. After her transfer to replace one of them, organizational charts continued to show 11 community-school coordinators.
The Birmingham Public Schools Directory identifies the plaintiff as the "Coordinator" at Parker Community School, precisely as it lists other community-school coordinators at their respective Community Schools. Likewise, a printout of employees for Parker Community School shows her as the "Coordinator" of that school.
In a 1994 letter to the senior assistant superintendent, personnel division, Dr. Peggy F. Sparks, then director of the Community Education Department of the Birmingham Public Schools, identified the plaintiff as "an eleven month special projects coordinator" and as "coordinator of Parker Community School." In a 1997 letter to Geraldine Bell, interim superintendent of the Board of Education, Clifton T. Griffin, acting director of the Community Education Department, stated that the plaintiff, a special projects coordinator, had a different salary arrangement than "regular Community School Coordinators."
In December 1998, the plaintiff wrote a "Personnel Specialist" with the Birmingham Public Schools a letter requesting a salary adjustment to be paid according to the salary schedule for a community-school coordinator. In March 1999, Dr. Sparks, then senior executive director of Parent, Community, and Student Support Programs, wrote the superintendent of the Birmingham Public Schools a letter stating that she had transferred the plaintiff "to a program assistant slot at Parker for Zone I, yet continued her same salary and job description."
In March 1999, Clifton T. Griffin, who was then the coordinator for the West End Community School, wrote Otis Dismukes, the acting director of the Community Education Department, a letter stating that, after he discussed the plaintiff's duties and pay with Mr. Dismukes and Dr. Sparks, "it is ascertained that there are no funds available in the budget for an increase in the salary of any employee, and . . . the only way she can be paid for a regular community education coordinator's salary is to apply for the position when one becomes available and is selected for the position." Shortly thereafter, the Board of Education approved a $17,644 per year pay raise for Dr. Sparks.

Standard and Rules of Review
"On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate *683 appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals." Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425 (Ala.1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996).
If substantial evidence in the record supports a cognizable claim pleaded by the plaintiff, the defendant is not due a summary judgment on that claim, even if the record also contains substantial countervailing evidence. See Hollingsworth v. City of Rainbow City, 826 So.2d 787 (Ala.2001); McGinnis v. Jim Walter Homes, Inc., 800 So.2d 140 (Ala.2001); Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999). Unless a motion for summary judgment challenges the existence of evidence to support an essential element of the nonmoving party's case, the motion does not shift to the nonmoving party any burden to produce evidence supporting that essential element, and the motion will not support a summary judgment grounded on an absence of supporting evidence or the existence of undisputed countervailing evidence on that essential element. Kennedy v. Western Sizzlin Corp., 857 So.2d 71, 78 (Ala.2003); Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1068 n. 3 (Ala.2003); Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003); Fountain v. Filson, 336 U.S. 681, 683, 69 S.Ct. 754, 93 L.Ed. 971 (1949).

Law and Analysis
The plaintiff contends that the holding by the Court of Civil Appeals that, in order to withstand summary judgment on her equal-protection claim, she must allege and prove that the defendants treated her differently from other similarly situated employees with the intent to discriminate against her on the basis of a suspect class, such as race, gender, or religion, or on some other impermissible ground, conflicts with Olech, supra, wherein the United States Supreme Court, affirming the United States Court of Appeals for the Seventh Circuit on a ground different from that invoked by the Seventh Circuit, held:
"Our cases have recognized successful equal protection claims brought by a `class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). In so doing, we have explained that `"[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."' Sioux City Bridge Co., supra, at 445, 43 S.Ct. 190 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)).
". . . The complaint also alleged that the Village's demand was `irrational and wholly arbitrary' and that the Village ultimately connected her property after *684 receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis."
528 U.S. at 564-65, 120 S.Ct. 1073 (emphasis added). Although the United States Supreme Court has applied the "class of one" equal-protection violation analysis only to claims of equal-protection violations in land use cases, various federal appellate courts recently have applied or discussed the "class of one" analysis in cases of other kinds of equal-protection violations: Cobb v. Pozzi, 352 F.3d 79 (2d Cir.2003); DeMuria v. Hawkes, 328 F.3d 704 (2d Cir.2003); African Trade & Information Ctr., Inc. v. Abromaitis, 294 F.3d 355 (2d Cir.2002); Cruz v. Town of Cicero, 275 F.3d 579 (7th Cir.2001); Giordano v. City of New York, 274 F.3d 740 (2d Cir.2001); Bartell v. Aurora Public Schools, 263 F.3d 1143, 1149 (10th Cir.2001); Hilton v. City of Wheeling, 209 F.3d 1005 (7th Cir.2000). See Williams v. Pryor, 240 F.3d 944, 951 (11th Cir.2001).
On a challenge to a jury verdict in favor of the plaintiffs on equal-protection claims brought by officers who were disciplined for behavior for which other similarly situated officers were not disciplined, the United States Court of Appeals for the Second Circuit stated:
"[T]he plaintiffs' Olech-based equal protection claim is not dependent on their ability to prove that they were disciplined for an impermissible reason, i.e., for their COBA [Corrections Officers' Benevolent Association] membership. Rather, under Olech, the plaintiffs can recover if they can show that they were treated differently from similarly situated officers, such as Officers Conway and Vanderwerff, and that there was `no rational basis for the difference in treatment.' Olech, 528 U.S. at 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060. Clearly, the evidence that the defendants disciplined the plaintiffs based on a belief that the plaintiffs were engaged in an unlawful job action makes the task of showing irrational treatment considerably more difficult; however, it does not foreclose the plaintiffs' pursuit of such a claim under Olech. A jury could find that the defendants' subjective belief was unwarranted and that such an unwarranted belief resulted in the irrational treatment of the plaintiffs. Accordingly, we agree with the plaintiffs that the evidence adduced at trial was sufficient to withstand a motion for judgment as a matter of law on their Olech-based equal protection claim."
Cobb v. Pozzi, 352 F.3d at 99-100. Accord African Trade & Information Ctr., Inc. and Giordano, supra.
Reversing the dismissal of the equal-protection violation claim by a husband and a wife that police treated them differently from other citizens complaining of harassment, the United States Court of Appeals for the Second Circuit stated:
"As recognized by the district court, the DeMurias' equal protection claim is governed by the Supreme Court's holding in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). There, the Court held that a successful equal protection claim may be `brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' Id. at 564, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060. Olech sued the Village after it required her to grant a 33-foot easement, as opposed to the 15-foot easement required from other property *685 owners, to connect to the Village's water supply. Id. at 563, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060. Olech claimed that the Village's demand for an additional easement was `irrational and wholly arbitrary' and was made with the intent to deprive her of her rights or in reckless disregard of her rights. Id. The lower court dismissed Olech's complaint on the pleadings, finding her allegations to be insufficient to state a judicially cognizable equal protection claim. Id. The Seventh Circuit reversed, concluding that an allegation of subjective ill will was adequate to make out an equal protection violation.
"The Supreme Court affirmed on a different rationale. The Court found that Olech's complaint could `fairly be construed as alleging' differential treatment from similarly situated property owners which, coupled with Olech's allegation that the Village's conduct was irrational and wholly arbitrary, was `sufficient to state a claim for relief under traditional equal protection analysis.' Id. at 565, 120 S.Ct. 1073. In so holding, the Court found it unnecessary to consider the question of the Village's subjective motivation. Id."
DeMuria, 328 F.3d at 706.
Affirming a summary judgment entered against a plaintiff-husband and a plaintiff-wife on their claims for an equal-protection violation by a school district in the allegedly wrongful termination of the husband's employment, the United States Court of Appeals for the Tenth Circuit stated:
"We also noted that the Supreme Court recently stated, `Our cases have recognized successful equal protection claims brought by a `class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed. 1060 (2000) (per curiam) (quotation omitted). . . ."
Bartell, 263 F.3d at 1149. While the Bartell Court recognized that an Olech claim does not require motivation by an impermissible animus as an essential element, the Bartell Court held that the plaintiff had not asserted an Olech claim but instead had chosen and alleged, but had not proved, the distinct theory that the unequal treatment was motivated by an impermissible animus rather than that the unequal treatment was irrational and arbitrary.
The cases decided by the United States Court of Appeals for the Seventh Circuit conflict with those of the Second Circuit and the Tenth Circuit. Cruz and Hilton, supra. The Seventh Circuit acknowledges that a plaintiff asserting an equal-protection claim need not prove his or her status as a member of a suspect class to invoke the protection of the Equal Protection Clause. Id. The Seventh Circuit also recognizes that a plaintiff asserting an equal-protection claim must prove two elements. The first, as in Olech and the cases from the Second Circuit and Tenth Circuit, is unequal treatment under the laws. However, for the second element, the Seventh Circuit, relying on Justice Breyer's special concurrence in Olech, and insisting on their original holding the United States Supreme Court declined to address in Olech, has, in their word, "gloss[ed]" the "irrational and wholly arbitrary" second element of Olech to mean
"that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position."
Hilton, 209 F.3d at 1008, and Cruz, 275 F.3d at 587.
*686 Section 1 of the Fourteenth Amendment reads:
"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny any person within its jurisdiction the equal protection of the laws."
The text of this Amendment prohibits all denials of equal protection, not just those motivated by an impermissible animus. Thus a strict construction of the Amendment itself supports the conclusion that the majority opinion in Olech, quoted supra, means exactly what it says, see Cobb, African Trade & Information Ctr., Inc., and Giordano, supra, without the limitation nevertheless retained by the Seventh Circuit in Cruz and Hilton to the effect that impermissible motivation is an essential element of an Olech claim.
According to Olech, the essential elements of a claim for a federal equal-protection violation to a "class of one" are only that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 528 U.S. at 564, 120 S.Ct. 1073. Accordingly, the holdings by the Court of Civil Appeals to the effect that, to withstand summary judgment, the plaintiff's equal-protection claim must include allegations and proof that the defendants treated her differently for the purpose of discriminating against her on an impermissible basis and to the effect that the absence of "substantial evidence in the record of an intent by the defendants to discriminate against [the plaintiff] on the basis of her race, her gender, or any other impermissible ground" defeats her equal-protection claim and justifies the summary judgment, McCord-Baugh, 894 So.2d at 675-76, conflict with Olech, supra. The plaintiff's allegations, unchallenged by the defendants' motion for summary judgment, that the defendants intentionally, arbitrarily, capriciously, and irrationally treated her differently from, less favorably than, similarly situated employees performing the duties of a community-school coordinator, are sufficient for the requirements of Olech, supra.
Although the defendants argue before us, and argued before the Court of Civil Appeals, that rational reasons exist for their differential treatment of the plaintiff,
"`[m]otions and arguments of counsel are not evidence.' `[S]tatements in motions are not evidence and are therefore not entitled to evidentiary weight.' `[B]riefs submitted in support of motions are not evidence to be considered by the Court in resolving a summary judgment motion.'"
Fountain Fin., Inc. v. Hines, 788 So.2d 155, 159 (Ala.2000) (citations omitted). Accord Ex parte Coleman, 861 So.2d 1080 (Ala.2003). The record is devoid of evidentiary material establishing a rational basis for the defendants' treating the plaintiff differently from other coordinators. Indeed, the defendants' motion for summary judgment did not challenge the plaintiff's allegations that the defendants' continuing refusal to pay her equally was arbitrary, capricious, and not rationally related to any legitimate governmental purpose. Thus the motion for summary judgment did not shift any burden to the plaintiff to produce her evidence supporting these allegations. Kennedy, Tanner, Liberty Nat'l, and Filson, supra. Therefore, the motion for summary judgment did not, does not, and would not support summary *687 judgment grounded either on an absence of supporting evidence or the existence of undisputed countervailing evidence on these allegations. Id. Consequently, the Court of Civil Appeals erred in holding that "the defendants have shown legitimate, nondiscriminatory reasons for their decision not to pay McCord-Baugh as a community-school coordinator." McCord-Baugh, 894 So.2d at 676.
The defendants argue to us as they did to the Court of Civil Appeals that the plaintiff's equal-protection claim is barred by the applicable statute of limitations even if the claim would otherwise withstand summary judgment. The defendants argue to us that, on the ground of the statute of limitations, we should affirm the judgment of the Court of Civil Appeals affirming the summary judgment even though the decision of the Court of Civil Appeals expressly rejects the defendants' statute-of-limitations defense to the plaintiff's equal-protection claim, McCord-Baugh, 894 So.2d at 676. The defendants, however, have not properly invoked our Rule 39(a)(1), Ala. R.App. P., certiorari jurisdiction to review this statute-of-limitations holding against the defendants. See Marshall v. State, 884 So.2d 900, 902 (Ala.2003) (clarifying Ex parte Fountain, 842 So.2d 726 (Ala.2001)). Thus, this holding by the Court of Civil Appeals remains in full force and effect without our reviewing it or expressing any opinion on it.
The defendants also argue several defenses not reached or not developed in the opinion by the Court of Civil Appeals. Our reversal of the affirmance of the summary judgment on the plaintiff's equal-protection claim neither forecloses nor invites further consideration of these defenses by the Court of Civil Appeals. See Ex parte Helms, 873 So.2d 1139 (Ala.2003).

Conclusion
The decision of the Court of Civil Appeals is reversed for its conflict with Olech, supra, and is remanded for proceedings consistent with this opinion. Because we have not accepted for certiorari review the affirmance of the summary judgment on the plaintiff's claim that the defendants violated their own policies and thereby breached the contract between the Board and the plaintiff, this part of the decision of the Court of Civil Appeals remains in full force and effect, without our reviewing it or expressing any opinion on it.
REVERSED AND REMANDED.
WOODALL, J., and BEATTY, Special Justice,[*] concur.
SEE, LYONS, and HARWOOD, JJ., concur specially.
HOUSTON, BROWN, and STUART, JJ., dissent.
SEE, Justice (concurring specially).
I concur with the main opinion's holding reversing the judgment of the Court of Civil Appeals. I also concur with Justice Harwood's special writing. I write specially, however, to note additional implications of this Court's reliance on Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).
In the case before us, the issue is whether McCord-Baugh's constitutional right, under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, has been abridged by the decision of the Birmingham City Board of Education not to increase her pay, a decision McCord-Baugh *688 argues is an "`irrational and wholly arbitrary' refusal to pay [McCord-Baugh] the same as similarly situated Community School Coordinators." There is no suggestion that McCord-Baugh is a member of any class that would require a close-scrutiny analysis of her case.
I have no objection, if I may be permitted any, to the Supreme Court's interpreting the Equal Protection Clause of the Fourteenth Amendment as applicable to individuals; that interpretation is consistent with the plain language of the amendment. ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." (Emphasis added.)) Indeed, it is a peculiar artifact of the time in which we live that the Supreme Court would have to address whether a constitutional provision that says it applies to "any person" applies not just to a large class of persons, but also to a "class of one," that is, a class composed of one such "person."
I also note that McCord-Baugh presumably still must satisfy the rational-basis standard applied to equal-protection cases:
"In equal protection jurisprudence, any law that does not employ a classification based on race, sex, national origin, or legitimacy of birth and does not impinge upon a fundamental right, is subject to the `rational relationship' analysis. Under this analysis, any law rationally related to a legitimate governmental objective will withstand an equal protection challenge. See generally Lyng v. Castillo, 477 U.S. 635, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986); County Board v. Richards, 434 U.S. 5, 98 S.Ct. 24, 54 L.Ed.2d 4 (1977)."
Ex parte Robertson, 621 So.2d 1289, 1291 (Ala.1993). However, the case before us is quite different from the cases to which the rational-relationship analysis is ordinarily applied. In the case before us, what is at issue is McCord-Baugh's job title and pay. The rational basis for the Legislature's adopting a statute is a wholly different question from the rational basis for paying one employee differently from another.
This case involves not the validity of a statute, but the inner workings of an instrumentality of government. It raises separation-of-powers questions among the branches of the state government, and it raises federalism questions when brought in the federal courts  with federal question jurisdiction, it appears, over every salary decision on every state employee. In particular, the review of state administrative decisions may thrust the federal government, in the mantle of its courts, into the review of salary decisions made by state managers for the rationality of a manager's decision on the appropriate pay for an individual employee. This in turn raises the specter of New York v. United States, 505 U.S. 144, 175, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) ("federal action would `commandeer' state governments into the service of federal regulatory purposes, and would for this reason be inconsistent with the Constitution's division of authority between federal and state governments").
Such questions, however, while of the greatest moment, are not before us today. And if the Supreme Court of the United States did not mean for the sweep of Olech to be as broad as its language, then that is a matter for another day.
LYONS, Justice (concurring specially).
I concur in the main opinion. I join Justice Harwood's special concurrence. There is sufficient conflict among the federal circuit courts of appeal as to the meaning of Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), to invite resolution of *689 this issue by the United States Supreme Court in some future proceeding.
HARWOOD, Justice (concurring specially).
I concur in the main opinion. I write specially to note additional considerations that persuade me its reasoning is sound under the particular procedural and evidentiary posture of this case.
The United States Supreme Court's decision on which the main opinion and my special concurrence pivot, Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), is a short and forthright, but somewhat perplexing, opinion. I am perplexed by the fact that the Supreme Court granted Grace Olech's petition for writ of certiorari "limited to" only one of the questions presented by the petition:
"Whether the Equal Protection Clause gives rise to a cause of action on behalf of a `class of one' where the claimant does not allege membership in a class or group, but asserts that vindictiveness motivated the government to treat her differently than others similarly situated."
Brief of Petitioners at p. i., Olech.
Subsequently, in its February 23, 2000, opinion the Court stated: "We granted certiorari to determine whether the Equal Protection Clause gives rise to a cause of action on behalf of a `class of one' where the plaintiff did not allege membership in a class or group." 528 U.S. at 564, 120 S.Ct. 1073. The Court appears to have rephrased the question accepted for review so as to eliminate from consideration the element of vindictive motivation.
Olech and her husband, residents of the Village of Willowbrook, had applied to the Village to connect their house to its water system, after their well failed. The Village agreed to connect the Olechs' house to its water system, but required as a condition that the Olechs grant it a 33-foot easement, rather than the 15-foot easement customarily required of all other residents connecting to the water system. The larger easement would permit the Village to widen the road on which the Olechs lived. Although the Village subsequently relented and allowed the water connection upon the grant of only a 15-foot easement, the Olechs were without water for three months. Olech v. Village of Willowbrook, 160 F.3d 386, 387 (7th Cir.1998). In Ms. Olech's ensuing lawsuit, she alleged that the Village and two of its officials had been motivated to insist on the larger easement because "the Olechs earlier had sued the Village and obtained damages, for flood damage caused by the Village's negligent installation and enlargement of culverts located near the Olechs' property." 160 F.3d at 387. Ms. Olech alleged that the flood-damage lawsuit had generated substantial ill will and that she and her husband "had been treated differently, to their detriment, from all other property owners in the Village only because their meritorious suit against the Village had angered Village officials." 160 F.3d at 388. The federal district judge granted the defendants Rule 12(b)(6), Fed.R.Civ.P., motion for dismissal, on the ground that Ms. Olech had not sufficiently alleged the type of malice giving rise to Equal Protection Clause liability under prior caselaw. On appeal, the United States Court of Appeals for the Seventh Circuit characterized the case as falling within the category of "vindictive-action equal protection cases" and reversed, holding that if the Village had refused to perform its obligation to provide water for one resident "for no reason other than a baseless hatred, then it denies that resident the equal protection of the laws. And that is sufficiently alleged." 160 F.3d at 388. The court explained that in that *690 class of equal-protection case, the plaintiff must prove "that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant." 160 F.3d at 388.
Despite this background, the Supreme Court ignored the phrasing of the question it had accepted for certiorari review, and engaged in the following "linking" rationale: Because its cases had previously recognized that an equal-protection claim might be brought by a "class of one" if the plaintiff alleged that he or she had been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," 528 U.S. at 564, 120 S.Ct. 1073, a plaintiff whose complaint alleged that the defendant had intentionally demanded a concession significantly different from that required from other similarly situated property owners, and that the demand was "irrational and wholly arbitrary" would sufficiently state a "class of one" equal-protection-violation claim. Thus, Ms. Olech's allegations that the Village had intentionally demanded a 33-foot easement rather than the 15-foot easement it required of all other similarly situated property owners and that the demand was irrational and wholly arbitrary were, "quite apart from the Village's subjective motivation," sufficient to state a claim. 528 U.S. at 565, 120 S.Ct. 1073 (emphasis supplied). Therefore, the Supreme Court affirmed the judgment of the Court of Appeals for the Seventh Circuit, which had reversed the district court's Rule 12(b)(6) dismissal, but solely on the basis of its separate analysis. It explained that it did "not reach the alternative theory of `subjective ill will' relied on by [the Court of Appeals]." 528 U.S. at 565, 120 S.Ct. 1073.
It is significant to me that Justice Breyer squarely put before the majority the option of affirming the judgment of the Seventh Circuit on the basis of Ms. Olech's express averment of subjective ill will, but the majority would have none of it; it opted to put all of its eggs in one basket by declaring that a complaint alleging only intentional discriminatory treatment that is irrational and wholly arbitrary is sufficient to state a claim for relief under traditional equal-protection analysis.
In Williams v. Pryor, 240 F.3d 944 (11th Cir.2001), the United States Court of Appeals for the Eleventh Circuit stated the following, in internally confusing dictum (the claim at issue in that case was exclusively "a fundamental rights facial challenge to [an] Alabama statute," 240 F.3d at 952):
"The Supreme Court recently reaffirmed the Equal Protection Clause is violated (in cases in which heightened scrutiny does not apply) when the plaintiff  whether a class, group, or simply one individual  proves `that she has been intentionally treated differently than other similarly situated and there is no rational basis for the difference in the treatment.' Village of Willowbrook v. Olech, 528 U.S. 562[, 120 S.Ct. 1073, 145 L.Ed.2d 1060] . . . (2000) (holding that plaintiff stated constitutional Equal Protection Clause cause of action by alleging that village acted irrationally, wholly arbitrarily and out of malice toward plaintiff when it demanded a 33-foot easement from plaintiff, contrary to 15-foot easements obtained from others similarly situated)."
240 F.3d at 951 (emphasis supplied).
In Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430 (4th Cir.2002), by way of contrast, the court expressed its understanding of the holding of Olech to be that the Supreme Court had "made clear" in that case "that a party can bring an equal-protection claim by alleging that *691 it has `been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" 281 F.3d at 439. (The plaintiff in that case lost at summary-judgment stage because it had "not provided evidence that it was irrationally or arbitrarily treated differently from similarly situated parties." 281 F.3d at 440.)
Two other federal circuit courts of appeal have expressed their understanding that the Supreme Court has eliminated subjective motivation as a necessary element in a class-of-one equal-protection-violation claim. Burns v. State Police Ass'n of Massachusetts, 230 F.3d 8, 12 n. 4 (1st Cir.2000); Costello v. Mitchell Public School Dist. 79, 266 F.3d 916, 920 (8th Cir.2001).
In the final analysis, I cannot agree with the seemingly "head-in-the-sand" approach of the Seventh Circuit, by which it ignores the explicit holdings of the Supreme Court in Olech, and elects to accept as controlling the opinion of Justice Breyer concurring in the result. I see no reasonable way of interpreting the opinion of the Supreme Court in Olech other than to accept it at face value. Justice Breyer presented his position and rationale to the rest of the Court, and the other Justices were not persuaded; they decided explicitly and without ambiguity that a plaintiff making a class-of-one equal-protection claim has sufficiently stated a claim for relief under traditional equal-protection analysis when he or she alleges (1) that he or she has been intentionally treated differently from others similarly situated and (2) that the treatment was irrational and wholly arbitrary, "quite apart from [the defendant's] subjective motivation." 528 U.S. at 565, 120 S.Ct. 1073. Although, as explained above, I find the holding procedurally perplexing, I cannot ignore the short and to the point actual holding.
In closing, I observe that, in my view, our holding in no way precludes the defendants from subsequently coming forth with proof that there was a rational and nonarbitrary basis for their decision. At the stage the case reaches us, however, as the main opinion so ably explains, there is no proof in the record of that justification.
SEE and LYONS, JJ., concur.
HOUSTON, Justice (dissenting).
I dissent.
I adopt the unanimous opinion of the Court of Civil Appeals as my dissent. See McCord-Baugh v. Birmingham Bd. of Educ., 894 So.2d 672 (Ala.Civ.App.2002). I share the concern of Justice Breyer in his opinion concurring in the result in Village of Willowbrook v. Olech, 528 U.S. 562, 565, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), that the Court not "transform many ordinary violations of city or state law into violations of the Constitution. It might be thought that a rule that looks only to an intentional difference in treatment and a lack of a rational basis for that different treatment would work such a transformation." In my opinion, Justice Breyer's concern has come to fruition in the majority opinion in this case.
I do not understand Williams v. Pryor, 240 F.3d 944, 951 (11th Cir.2001), the only Eleventh Circuit case cited in the majority opinion, as adopting a "class of one" analysis in equal-protection challenges other than in land-use cases.
NOTES
[*] Retired Associate Justice Sam A. Beatty was appointed on March 3, 2004, to be a Special Justice in regard to this appeal.